## JOHN A. SINCLAIR v. SAMUEL E. MATTER.[1]

May 29, 1914.

Nos. 18,573—(112).

**Adverse possession — finding not sustained by evidence.**

> Trial court's finding, on application to register title to land, that defendant's predecessor in title was never in adverse possession of the land as against the title asserted by applicant, *held* not sustained by the evidence.

John A. Sinclair applied to the district court for St. Louis county to register his title to certain city lots. Samuel E. Matter objected to the application, alleged that he himself was the owner in fee simple of the premises and in actual possession of them, and made application to register the title in himself. Catherine H. Macfarlane, as administratrix of the estate of Angus R. Macfarlane, deceased, and individually, objected to the application of Samuel E. Matter, and alleged that Angus R. Macfarlane died seized of the title to the land in question, subject to the liens of such unsatisfied judgments as existed at that time. The proceeding was heard before Ensign, J., and the applicants Sinclair and Matter stipulated that title to the

[1] Reported in 147 N. W. 655.

land on December 11, 1889, was vested in Angus R. Macfarlane. The court made findings and ordered judgment in favor of the applicant Sinclair, subject to an easement in favor of the city of Duluth, for the purpose of constructing and maintaining sewers across that part of the land which was formerly within the boundaries of Roslyn avenue. From an order denying the application of Samuel E. Matter for a new trial, he appealed. Reversed.

*Alford & Hunt,* for appellant.

*Washburn, Bailey & Mitchell,* for respondent.

PHILIP E. BROWN, J.

In proceedings to register title to lots 4 and 5, in block 16, Second Glen Avon Division of Duluth, the court determined the applicant to be the owner thereof in fee. After denial of defendant's motion to amend the findings and for a new trial, he appealed.

Applicant's title is conceded, unless the city of Duluth, to whose alleged title defendant succeeded, acquired the same by adverse possession. Defendant's principal contention is that the latter was conclusively established.

It appeared without dispute that on and previous to November 7, 1892, a Mr. Macfarlane owned the lots, his residence being near thereto, where he continued to live until his death, which occurred in December, 1908. His residence and the lots were situated in a then sparsely settled portion of the city. He, with other property owners of that vicinity, desired city fire protection, which up to that time had not been provided. On the date first mentioned he addressed a letter to the chairman of the committee on fire protection, as follows:

"I wish to state to you, as I did to the board of fire protection last Saturday, that if the fire protection which was asked for the Woodland Avenue District was furnished this fall, I will, if necessary to that end, donate a site with a fifty-foot frontage on Roslyn avenue, next to the Glen Avon public school, and agree to carry the cost of the building and its equipment up to say ten thousand dollars ($10,000), until such time as the city is in funds, say any time within eighteen months, upon the legally drawn order or orders issued by the city. The protection asked for is very much needed, and should in all fair-

ness be put in at once. In the past twenty months there have been several fire losses in that district, one amounting to about six thousand dollars ($6,000) which could easily have been averted by a small chemical engine."

On the same date the board of fire commissioners sent the common council the following recommendation:

"We again take the liberty of recommending to your honorable body the necessity of fire protection for the people of Woodland District. In consideration of the same, Mr. A. R. Macfarlane, of the American Exchange Bank, has agreed to donate to the city a fifty-foot lot for a fire department building, and he further agrees that, in case of a shortage in the fire department fund, he will carry the city orders at the usual rate of interest, for the expense of the same, provided it does not exceed ten thousand dollars."

The city council, on November 14 following, adopted this resolution:

"Whereas, A. R. Macfarlane has offered to donate to the city of Duluth a site of 50 foot frontage on Roslyn avenue, next to Glen Avon public school, for a fire engine house at Woodland, and has offered to carry the cost of a proper building and the equipment for an amount not exceeding $10,000, for a period not exceeding 18 months upon a legally drawn order or orders, to be issued by the city at the usual rate of interest. Be it resolved, that the offer of said A. R. Macfarlane be, and the same is hereby, accepted, and be it further resolved that the board of public works be, and they are hereby, instructed to enter into a contract for said lot and ascertain the cost of a suitable building for fire purposes and report same to this council at the next regular meeting thereof."

The records of the board of public works, of date November 19, contain the following:

"The resolution of the common council relating to the offer of A. R. Macfarlane to donate to the city of Duluth a site of 50 foot frontage on Roslyn avenue next the Glen Avon public school for a fire engine house at Woodland and to carry the cost of a proper building and its equipment for an amount not exceeding $10,000

for a period not exceeding eighteen months, was laid on the table."

And of date December 19:

"In the matter of a resolution adopted by the common council on November 14, 1892, instructing the board of public works to enter into a contract with A. R. Macfarlane for a fifty-foot lot on Roslyn avenue in Glen Avon for the purpose of erecting thereon a fire engine hall, a report was ordered sent to the common council, stating that Mr. Macfarlane had consented to donate Lots 4 and 5, block 16, Second Division of Glen Avon, 100 feet on Roslyn avenue; that the board had accepted the plans for the building, furnished by Wagenstein and Baillie, subject to the approval of the council; architects to receive 5% of the cost of the building for furnishing detail plans and superintending construction; that the estimated cost of the building was $4,000, and asking the order of the common council to advertise for bids for the construction of the building as soon as deed for the lots could be secured by the city."

Outside of this record there is no evidence of Mr. Macfarlane's relation to the change to the larger site, none of any conveyance thereof to the city, nor direct evidence of any gift of or consent to the city's occupying it. However, it included the site first proposed. Contracts were thereafter let by the city for construction of the fire engine house, and it took possession of the lots and commenced building on February 10, 1893. The building was erected partly on a stone foundation, at a cost exceeding $4,000. It was completed in 1893 and from then for upwards of four years was occupied by the city with fire apparatus and crew, but was not thereafter used by it for any purpose. After its abandonment for fire purposes the city caused the doors to be locked, windows to be boarded up, and, several times during each year, until 1909, the renewal or renailing of the boards as found necessary, the property also being inspected by the fire department at various times during such period. On January 21, 1909, the city quitclaimed the property to one Joe Roy for a consideration of $251. Shortly thereafter the grantee razed the building, and subsequently, on October 6, 1909, conveyed to defendant. Between the city's discontinuance of use for fire purposes and the conveyance to Roy, a church society and an individual used the property for a time for storage purposes, but by whose authority is not

shown.    It appeared also that school boys sometimes removed the
boards from the windows and opened the doors, and on one occasion
during the same period Mr. Macfarlane instructed the janitor of a
neighboring school house to close the building and board up the
windows.    With this exception it does not appear that either he or
his heirs in anywise exercised dominion over the property after the
city took possession.    It was entered in the city assessment books in
the city's name and as exempt from taxation for the year 1892 and
up to and including 1908.    Applicant's pleading contained, among
other things, allegations denying that defendant and his grantors had
been in "actual, exclusive, open, notorious and adverse possession of
the said lands," as claimed by him, "or that they or any of them have
been in actual possession thereof, except for a period of less than
five (5) years;" and further, on information and belief, that defend-
ant "claims title to the said lands either directly or through a mesne
conveyance from the city of Duluth, but denies that the said city
of Duluth ever owned said premises or ever had title thereto, but
that the said city was gratuitously given possession more than twenty
years ago of said lands by one Angus R. Macfarlane, now deceased,
for the purpose of constructing and maintaining thereon a branch
of the fire department of the said city, and in pursuance thereof
the said city did construct a so-called fire hall thereon, and for a
brief period of time, the exact time this party does not know, but
alleges the same to have been about two years, occupied the said
building with the equipment and men as a branch fire department
of the said city of Duluth that about fifteen years ago the said
city abandoned the same as a fire station, abandoning its possession
of said lots, and the said building remained thereon vacant and was
allowed to become a wreck and ruin, and that within the last five
years the said city sold said building to one Joseph Roy who so far
entered upon the said lands as to remove said building therefrom
and vacate the same."

The court found the city was never at any time in possession of
the land in controversy holding adversely to the Macfarlane title, and
further that defendant did not acquire any title thereto by adverse
possession.

There was also some testimony introduced by applicant, over de-

fendant's objection, concerning conversations between Mr. Macfarlane and the city's fire commissioner, occurring in the fall of 1891 or early in 1892. It is doubtful if this testimony was admissible; but in any event we deem it too remote to be of probative value.

Recurring now to the question of whether the city's adverse possession was conclusively established, we approach the discussion, having in mind the weight to be accorded the trial court's findings and the presumption that the city's occupancy was in subordination to the true title, and further that the city's acts regarding possession must be construed strictly and the character of the possession clearly shown. Preble v. Maine Cent. R. Co. 85 Me. 260, 27 Atl. 149, 21 L.R.A. 829, 35 Am. St. 366; 1 Dunnell, Minn. Dig. § 127. As said in Costello v. Edson, 44 Minn. 135, 138, 46 N. W. 299, 300:

"To determine whether particular acts or a course of conduct constitute adverse possession which, if continued, will bar the title of the original owner, regard must be had to the nature or quality of the acts, and to the situation of the property, as well as to the theory upon which the doctrine of adverse possession rests. The owner becomes barred of his right by reason of his acquiescence in the hostile possession of another under a claim of right, maintained for the period of 20 (now 15) years, and of which he has notice, or which is maintained under such circumstances that he is presumed to have notice."

The circumstances of possession must be of such nature as to preclude a conclusion that the owner was misled by facts from which he might reasonably have supposed a mere trespass had been or was being committed, instead of the assertion of a claim of right. The acts of the invader are sufficient if they clearly show actual appropriation to his permanent and exclusive dominion and benefit; but they must visibly indicate intention of permanent occupation and appropriation. Actual residence on the land, however, is not necessary. McCauley v. Town of McCauleyville, 111 Minn. 423, 127 N. W. 190, 20 Ann. Cas. 828.

We think it clear, from the history of the transaction here involved, that Mr. Macfarlane intended to make an absolute donation to the city of a site for the fire house, and that the authorities so

understood when they took possession and commenced the improvement. His conduct is referable to no other theory. The fact that the resolutions leading up to the city's occupancy of the property and the erection of the building, contemplated a conveyance of the property to the city, is of no significance, being merely for the city's protection, and in any event entirely consistent with a gift. Every element of trespass is eliminated, and it is almost inconceivable that the city would have made so extensive an improvement on the property of another without belief of right and intention to claim title, or that Mr. Macfarlane could have so believed. The law is settled that a donee's possession of land under a parol gift, accompanied by claim of ownership, is adverse to the donor and sets the limitation statute running. Malone v. Malone, 88 Minn. 418, 93 N. W. 605; Schafer v. Hauser, 111 Mich. 622, 70 N. W. 136, 35 L.R.A. 835, and note, 65 Am. St. 403. The gift itself may be established by circumstantial evidence, and we think no other deduction can fairly be made from the circumstances disclosed in the present case, but that in the inception of the transaction Mr. Macfarlane manifested his intention to donate the property, and in reliance thereon the city entered into possession under claim of right and title adverse to him, which, if continued for the statutory period, would ripen into title. Applicant's pleading alleges gratuitous giving of possession to the city by Mr. Macfarlane, and there is nothing to indicate that such possession was taken otherwise than under claim of right to the property itself. We hold the court's finding that the city was never in possession holding adversely not sustained by the evidence. Evidently the court passed upon no further issue, thus leaving undetermined the question whether there was such continuity of the city's adverse possession for the statutory period as to vest title. We cannot determine this in the first instance, but deem it advisable to say that on this record the evidence is persuasive in favor of defendant's claim.

We have not been unmindful of applicant's insistence that the records from which we have quoted are incompetent to show the city's intent; nor have we overlooked the argument based upon the inadequacy of the consideration for which the city sold the prop-

erty. As to the first it is sufficient to say that the records are in the case without objection, and those portions which do not themselves purport to show the acts of the city are proper to be considered for the purpose of ascertaining the premises upon which the city acted. As to the matter of the price for which the property was sold, the desire of the people of the vicinity of the fire house to get it removed and the evident fact that it had become useless to the city, are alone sufficiently suggestive of the reason for the sacrifice.

Order reversed.