[No. 13568.   Department Two.   January 26, 1917.]

OSWALD A. WEIDLICH *et al.*, *Appellants*, v. INDEPENDENT ASPHALT PAVING COMPANY, *Respondent.*[1]

TRIAL—ISSUES—LAW OR EQUITY—JURY TRIAL.   In an action in ejectment to recover parts of a vacated street that had been in controversy in a previous action, equitable issues are presented which make it proper to discharge the jury and try the case as an action to establish boundaries, under Rem. Code, § 947, where it appears that the parties are adjoining landowners, that, in the former action to recover possession of the strip of land, the verdict and judgment for a recovery of possession did not define the center of the street constituting the boundary line, which was still in dispute.

EJECTMENT—TRIAL—VERDICT—SUFFICIENCY.   In an action of ejectment between adjoining landowners, a general verdict merely finding for the plaintiff is defective in that it does not comply with Rem. Code, § 795, requiring the jury, if their verdict be for the plaintiff, to find that he is entitled to possession of the property described in the complaint, and the nature and duration of his estate.

JUDGMENT—RES ADJUDICATA—EJECTMENT — MATTERS CONCLUDED. In an action of ejectment between adjoining landowners, judgment upon a defective verdict merely finding for the plaintiff, is not *res adjudicata* or a bar to a second action to establish the lost boundary line upon the ground, under Rem. Code, § 795, where the former judgment was merely to the effect that the plaintiff recover possession of the premises, which were not described with sufficient· accuracy to enable possession to be delivered without reference to matters outside the judgment.

APPEAL—REVIEW—TRIAL DE NOVO.   Where an action was erroneously dismissed at the conclusion of the plaintiff's case on a chal-

[1]Reported in 162 Pac. 541.

lenge to the sufficiency of the evidence, there cannot be a trial *de novo* on appeal, but the case must be sent back for a new trial.

BOUNDARIES—LOST CORNERS—EVIDENCE—SUFFICIENCY. In an action to establish a lost boundary line, evidence to the effect that the defendant set his fences seventeen feet beyond the line indicated by stakes of the original survey, some of which were still standing, is sufficient to make out a *prima facie* case.

Appeal from a judgment of the superior court for Kitsap county, French, J., entered November 26, 1915, in favor of the defendant, upon sustaining a challenge to the evidence, dismissing an action of ejectment, tried to the court. Reversed.

*E. C. Million* and *Jesse A. Frye,* for appellants.

*John W. Roberts* and *J. L. Runner,* for respondent.

HOLCOMB, J.—Although appellants brought their action in the form of ejectment, upon the opening statement of counsel for appellants in the trial below, the court determined that the action was in substance an action to determine whether or not the boundaries of the lands between appellants and respondent had become lost or uncertain, they not being able to agree upon the establishment of the same, and that the action was, therefore, one to establish the boundary of lands and triable, under Rem. Code, § 947, by the court as a court of equity. The court thereupon discharged the jury and proceeded thereafter to the trial of the case as an equitable cause to establish lost or uncertain boundaries. This action, we think, was correct, as will more fully appear by the statement of the issues, controversies, and facts of the case so far as presented.

It is true that an intrusion by one landowner of his structure upon the land of an adjoining landowner without permission is a trespass, and may be treated as a disseizin for which ejectment will lie. Appellants own land adjoining that of respondent, the conceded division line being the center of Allison street on the plat known as the replat of Port

Orchard, Kitsap county, Washington. The property, how-
ever, is not within the limits of any municipal corporation;
the land of appellants lies on the north, and that of respond-
ent on the south, of that street. The replat of Port Orchard
was vacated in 1908, and each party, by reason thereof, be-
came the absolute owner to the center of Allison street.
Hence, both parties proceeded upon the theory that the
center of that street was the true dividing or boundary line.

This is the second action involving this boundary line. In
the former action the respondent here was the plaintiff and
these appellants and certain other persons were defendants.
That case was appealed to this court and is reported in *Inde-
pendent Asphalt Paving Co. v. Hein,* 73 Wash. 127, 131 Pac.
471, 134 Pac. 521. That action was brought by the respond-
ent here to recover possession of "a strip of land 120 feet in
width by about 2,500 feet in length, or some part thereof."

In this action appellants averred that, at the time of com-
mencing the action and for many years last past, they had
been, and were, the owners in fee simple and entitled to the
possession of the property described as blocks 65, 66, and 67
of the replat of Port Orchard City, save and except lots 9
and 10 of block 66, together with the streets lying in front
of and adjacent to said lots, and especially that plaintiffs
owned the north half of the street designated in said plat as
Allison street in front of said blocks, the plat of said blocks
having been vacated by the board of county commissioners
on January 7, 1908, and that on May ——, 1914, defendant
did, wrongfully and unlawfully, enter upon said lands, and
particularly upon blocks 65, 66, and 67, and the north half
of said Allison street, and did dig up the soil and take pos-
session thereof and build a fence thereon, and ever since said
time has refused to quit or surrender up possession thereof
to plaintiffs, all to their damage.

For answer to appellants' complaint, respondent denied all
those allegations, and for a second and affirmative answer,
entered the plea of *res adjudicata,* setting up the proceed-

ings, verdict, judgment, appeal and affirmance thereof, which was reported in the 73 Wash. decision. It is alleged, among other things, that, in that former action, the issues were presented between this respondent as the plaintiff and these appellants as part of the defendants; and that, in that action, the judgment rendered and entered firmly fixed and established the respective rights of the parties to this action in relation to all matters of ownership of the premises in question and the lines and measurements of the property owned by the respective parties herein, and the entire controversy now sought to be litigated in this action was finally litigated in the former action and became and is *res adjudicata,* and every issue sought to be raised and presented in this action was finally adjudicated in favor of this respondent in that former action. It was alleged in this plea that the verdict of the jury in that former action was as follows:

"We, the jury in the case Independent Asphalt Paving Company plaintiff, vs. Joseph N. Hein *et al.,* defendant, find for the plaintiff.

"Dated at Port Orchard, Washington, this 7th day of March, 1912.          John G. Carlisle, Foreman."

There was also set forth the judgment in the former action, which was in form that:

"Plaintiff have and recover judgment herein for the possession of the premises in controversy herein, and that the defendants be and they are hereby required to remove the fences heretofore erected upon the property of the plaintiff and recover of and from the defendants their costs and disbursements. Dated March 13, 1912."

A third affirmative defense was also pleaded in this action, alleging, in substance, that respondent, long prior to the commencement of the former suit referred to in the other affirmative answer, was, and ever since has been, the owner in fee simple of blocks 54, 61, 64, 68, 69 and 70, of the replat of Port Orchard City; that included in that replat was a street called Allison street, lying to the north

of blocks 68, 69, and 70, which was sixty feet in width, and that, on January 7, 1908, by order of the board of commissioners of Kitsap county, the plat or replat of a part of blocks, including those now in controversy, and the streets and alleys included therein were vacated, and that the streets therein vacated ceased to exist as public streets, and the respondent became then and thereby vested with the absolute right of possession of all that half of those streets and each of them adjacent to and abutting upon the blocks owned by the respondent; that it immediately took possession of the half of those streets and each of them belonging to it, and ever since has been, and is now, in the open, exclusive, and peaceable possession of the premises and each and every part thereof, and has at all times been, and is now, entitled to the exclusive ownership and possession of all such parts of the vacated streets, as against appellants and any other person or persons whomsoever; that the claim asserted by appellants constituted a cloud upon its title, etc.

Appellants demurred separately to the plea of *res adjudicata* and to the third affirmative defense of respondent, by general demurrers, which were overruled. Appellants then replied to the affirmative answers of respondent, denying that the action mentioned or the judgment referred to in its plea of *res adjudicata* affirmatively fixed or established, or in any manner fixed or established, the respective rights of the parties to this action in relation to the matters of ownership, boundary lines, or measurements of the property owned by appellants, and denied that the issues raised and presented to the court in this action had been in any manner adjudicated in the former action. And replying to the third affirmative defense of respondent, appellants admitted that respondent was the owner of the blocks in the answer described, and that it owned the south half of Allison street while appellants owned the north half thereof, and admitted that the replat of Port Orchard had been vacated, but denied that each of the adjacent owners on Allison street had taken pos-

session of their respective halves; on the contrary, alleged that respondent had taken possession of all of that street and ousted appellants from the possession thereof.

Upon these issues, when the cause came on for trial, counsel for appellants made an opening statement to the court and jury in which, among other things, it was stated, that appellants, with the exception of two lots, owned blocks 65, 66, and 67 of the replat of Port Orchard, on the north side of Allison street, and that respondent owned the opposite three blocks on the south side of Allison street, and that that street had been vacated; that there was no controversy but that each party took to the center of the street, appellants from the north and respondents from the south, the question for determination being the location of the center line of Allison street.   When the plat of the addition was made, it was surveyed and the survey staked out the blocks by putting a stake at each corner thereof, the real controversy being whether the surveyor made a mistake when he tied up the survey of the addition to the government post, respondent claiming that, in order to fix the lines, he must go to the government meander point and survey from there to the described plat, appellants claiming that the surveyor, by surveying the plat and setting the stakes, fixed the boundary regardless of whether the stakes were set at a proper distance from the meander corner or not; that, when a purchaser buys with reference to the stakes set, the stakes govern whether the surveyor be right or wrong; respondent claiming that, if a survey be made from the permanent government monument, Allison street would be something more than 100 feet further north and off on appellants' land; that a former trial had been had between these parties and other persons wherein this respondent claimed to the center of Allison street, and that these appellants had put a fence 120 feet south of that line, and judgment was rendered for them in that action, but that it had moved its fence over 137 feet from the alleged line, or 17 feet beyond where it

claimed the line in the former trial.    Appellants contend,
that the judgment in the former trial is not binding because
of its uncertainty, and that no boundary line was determined
in that action; that respondent is 137 feet on appellants'
land; that they will show that the boundary line between
theirs and respondent's land is 137 feet south of a certain
fence constructed by respondent, and that, even though the
court should find that the former judgment is binding as
to the 120 feet, respondent is still in possession of the 17
feet of appellants' land which has never been litigated; but
in no event is the judgment in the former action binding.

It was upon these issues and upon this opening statement
that the trial court held—and we hold correctly—that the
action was in essence one to determine and fix a lost or uncer-
tain boundary line.

The first question to be determined, and one of consider-
able importance and difficulty, is whether or not the pro-
ceedings, verdict and judgment in the former action ad-
judicated all the matters now in dispute.    It must be con-
ceded that the verdict in the former action was defective.    In
such a possessory action as was the former action, under our
statute, Rem. Code, § 795, it is required that:

"The jury by their verdict shall find as follows: (1) If the
verdict be for the plaintiff, that he is entitled to possession
of the property described  in the complaint, or some part
thereof, or some undivided share or interest in either, and
the nature and duration of his estate in such property,
part thereof, or undivided share or interest in either, as
the case may be."

The verdict did not comply with the statute, and the
judgment on the verdict went no further.    Whatever may
have been the allegations in the complaint in the former ac-
tion, the real questions at issue were substantially the same
as the questions at issue here, viz., where, *on the ground*,
is the center line of Allison street between the blocks owned
by these parties on either side of it?    The verdict and judg-

ment simply said that the jury found for the plaintiff, that it was entitled to the possession of the land it claimed. The question of the sufficiency of the verdict and judgment was not raised in the former case or upon appeal to this court, and the respondent here claims, and the trial court thought, that appellants are now concluded and estopped because they should have presented that question upon the former appeal; that if the defect in the verdict and judgment had been suggested to this court, this court, no doubt, would have determined the matter then and corrected it or ordered it corrected by retrial.

While in general it is true, and a general rule and our statutory rule, Rem. Code, § 793, that the property shall be described with such certainty as to enable the possession thereof to be delivered if a recovery be had in ejectment, yet when one of the objects of the suit is to ascertain and determine the limitations of the property involved in uncertainty in the complaint, as to the exact description, it may be aided and cured by the evidence in that respect and the finding of the court or verdict of the jury. This the respondent, who was the plaintiff and successful party in the former action, did not obtain. While, ordinarily, we would be disposed to hold that it would be res adjudicata, where the matter might if necessary have been presented upon appeal and determined, the difficulty in this case is that, in such a case as that, how may the judgment be enforced by the court having the power to enforce a valid judgment? The judgment relied upon as res adjudicata to the present case did not determine or settle the controversy between the parties to that action because it did not establish, fix, or determine the division line between the properties involved or describe the disputed tract so that it could be identified. The rule is practically universal that:

"The premises should be so described that the record will furnish evidence of the limits to which title is established

by the judgment, as well as to point out to the sheriff who serves the writ of possession the extent and location of the land recovered. . . . In order that the controversy between the parties may be definitely settled, we think the boundary lines should be accurately located and the disputed tract described with precision." *Porter v. Counts*, 6 Cal. App. 550, 557, 92 Pac. 655.

See, also, *Davis v. Judge*, 44 Vt. 500; *Tracy v. Harmon*, 17 Mont. 465, 43 Pac. 500; *Hoover v. King*, 43 Ore. 281, 72 Pac. 880, 99 Am. St. 754, 65 L. R. A. 790; *Franklin v. Haynes*, 119 Mo. 566, 25 S. W. 223; *College Corner & R. G. Road Co. v. Moss*, 92 Ind. 119; *Griffin v. Hall*, 111 Ala. 601, 20 South. 485; *Lundell v. Allen & Nelson Mill Co.*, 57 Wash. 150, 106 Pac. 626; 23 Cyc. 1121, 1235; 15 Cyc. 176.

As was said in *Franklin v. Haynes, supra*, which is extremely applicable here:

"The issue in the case was, what portion of the land, if any, was in defendant's possession. It seems to me that the judgment settles nothing, but leaves the rights of the parties where the pleadings and admissions left them. The issue is left to the determination of the sheriff when he undertakes to execute the writ. How could the sheriff know from a writ which follows the description contained in the judgment, where the line between these proprietors lay. The parties disagree, the witnesses differ, and the court does not decide.

"The judgment for possession, where division lines are in dispute, should describe the land adjudged with sufficient certainty to enable the executive officer of the court to correctly and intelligently execute a writ of possession."

In passing upon this case, the trial court referred to the testimony in the former case, and found that the witnesses in the former case went over practically the same questions as were presented in this case. He stated that he did not know what the judgment in the former case meant and that he did not know how it could be enforced. Nor do we.

It seems to us that such a case as this is not governed strictly by the ordinary rule of *res adjudicata*, and whatever should have been litigated in the former suit is presumed to

have been litigated, for the reason that, in a possessory action such as that was, the identity of the property adjudged to be the property of one or the other must be sufficiently described in the judgment that there may be no reference to any matter outside the judgment, in order to be able to enforce the judgment against the other party. That is not the case here. We cannot refer to the judgment and determine exactly where the title of either the plaintiff or the defendants in that case extended, and to what exact extent the right of possession was granted the plaintiff in that case. And that shows more emphatically that, whatever may have been the form in which the present action was brought, the trial court was justified in treating it as an action to determine the true boundary or the true location of Allison street and the center line.

The case rests here on the *prima facie* case, if any, as made by appellants alone, the court having granted judgment in favor of respondent upon a challenge to the evidence and the pleadings at the conclusion of appellants' case. We cannot, therefore, try the case *de novo*, nor can we inquire further than to determine whether or not appellants made a *prima facie* case to restore, determine, or establish a lost or uncertain boundary. As to this, we think they did. The opening statement of counsel, heretofore quoted, was substantially sustained by evidence produced by appellants, and there was evidence which stands undisputed to the effect that respondent, after the judgment in the former case, proceeded to build its fence at least seventeen feet north of the line which they claimed in the former trial to be the true line. If that be true—and as the evidence stands it must be assumed, appellants certainly made a *prima facie* case as to that seventeen-foot strip. They claim, however, that in fact respondent put its fence, and asserts its boundary line to be, one hundred and thirty-seven feet north of the boundary line, and there is undisputed testimony of a competent engineer to that effect.

The evidence of the engineer who made the original survey of the plat of Port Orchard City shows, *prima facie*, that many of the original stakes set by him at the corners of blocks, showing the numbers of the blocks, still stand in the original locations, and that others were found lying on the ground at the places where he originally located them. The evidence of another engineer was to the same effect, and of this other engineer that he proceeded to reestablish those corners of the blocks which were lost by reference to the stakes at the corners of blocks which were not lost, and thus located the exact boundaries of the various blocks and of the streets. These engineers thus located on the ground the location of Allison street between the blocks owned by these parties, and if Allison street as platted coincides with Allison street on the ground as located by these engineers, that is the true location of Allison street, and the center of that street, which is sixty feet wide, would be the present boundary line of the tracts owned by these respective parties, lying on either side thereof. Whether the blocks and streets as platted with reference to government monuments and official surveys will coincide with the staking or location of the blocks, and consequently the streets between the same, is another disputed question which should be determined. If they do coincide, it is conclusive. If they do not coincide and the parties bought with reference to the stakes upon the ground at the time they bought, they are bound thereby. *Turner v. Creech,* 58 Wash. 439, 108 Pac. 1084; *Campbell v. Seattle,* 59 Wash. 612, 110 Pac. 546; *Yarrow Land Co. v. Ross,* 79 Wash. 101, 139 Pac. 876; *Stokes v. Curtis,* 49 Wash. 235, 94 Pac. 1083.

We have examined with diligence and care the entire record in this case and all the cited law applicable thereto. Certainly, as to the seventeen-foot strip, appellants made a *prima facie* case that respondent has encroached and trespassed upon their land, even though the proceedings and judgment in the former case referred to should be held *res adjudicata.* This is a somewhat extreme case, but we feel

that, in the interests of justice and certainty to these parties, as well as to other parties who may own blocks in the vacated portions of the replat of Port Orchard, the true location on the ground, according to the plat of Allison street and the center line thereof, should be determined. It is our judgment, therefore, that the cause be remanded with instructions to the court to deny the motion of respondent for judgment in its favor on the evidence produced by appellants and the pleadings in the case, and to reopen the case and proceed to a final determination as in an action to establish or restore a lost or uncertain boundary under the provisions of §§ 947, 948, and 949, Rem. Code. Appellants will recover costs of the appeal.

MORRIS, MOUNT, FULLERTON, and PARKER, JJ., concur.