[No. 69521-1. En Banc.]
Argued January 18, 2001. Decided July 26, 2001.

HARRY W. HADLEY, ET AL., *Respondents*, v. JOHN DOE MAXWELL, ET AL., *Petitioners*.

*D. Michael Reilly* and *Michael B. King* (of *Lane Powell Spears Lubersky, L.L.P.*), for petitioners.

*Ronald P. Delgado* (of *Foreman, Arch & Delgado*); *Curtis L. Shoemaker* (of *Paine, Hamblen, Coffin, Brooke & Miller, L.L.P.*); *G. Joseph Schwab II* (of *Calbom & Schwab*); and *Michael T. Schein* (of *Maltman, Reed, North, Ahrens & Malnati, P.S.*), for respondents.

CHAMBERS, J. — In a contested hearing, Helen Maxwell was found to have committed a lane change violation, a traffic infraction. We are asked to determine whether collateral estoppel effect should be given this finding in a subsequent personal injury action. The offense was minor, and when there is nothing more at stake than a nominal fine, there is little incentive to vigorously litigate the issue. Therefore we hold the determination should not have a collateral estoppel effect in the subsequent civil action.

## FACTS

On April 16, 1992, a truck driven by Harry Hadley struck a car driven by Helen Maxwell. Both vehicles were traveling eastbound on I-90 near Moses Lake. The parties tell a conflicting tale of what occurred. Maxwell testified that she had passed her exit and was seeking a way off the freeway. She saw the freeway median was bisected by law enforcement emergency turnarounds. She recounted to the jury that she moved onto the left shoulder and slowed to take a closer look for possible use as a u-turn when she was struck from the rear. Harry Hadley remembered the events differently; he testified that as he approached the slowing Maxwell vehicle, it pulled into the right lane as if to let him

pass, and then made a sharp left turn in front of him, causing the impact. Undisputed is that upon impact, Maxwell's Honda rolled before coming to rest, upside-down, on the median.

Maxwell was removed from her car by paramedics and taken to a local hospital for treatment of her injuries. There Trooper Stratton interviewed her. After viewing the scene and talking to both drivers and Jewell Hadley, a passenger in the truck riding with her husband, Trooper Stratton issued Maxwell a traffic infraction for improper lane travel under RCW 46.61.140.

Five months later, Maxwell drove to Grant County District Court from her Tacoma home to contest the citation. She appeared without counsel and did not call Trooper Stratton to testify. The trooper's affidavit was read into evidence by the district court judge. The judge offered Maxwell a continuance to call the officer, but advised her it was unlikely to change his conclusion that she violated the statute. Maxwell declined the continuance. Instead, she argued the officer was factually mistaken. The judge found she had violated RCW 46.61.140, the lane change statute. She was fined $47; if she had paid without contesting the infraction it would have been $95. She did not appeal to superior court, which she was entitled to do.

Some time later, the Hadleys brought this personal injury action against Maxwell. Maxwell counterclaimed for her own injuries. In May 1997, the Hadleys moved for partial summary judgment, asking the trial judge (1) to apply collateral estoppel to block Maxwell from denying she violated RCW 46.61.140, (2) to find as a matter of law that violation proximately caused the Hadleys' injuries, and (3) to find as a matter of law she was negligent. The trial judge granted the first and denied the second and third. The trial judge held the violation of RCW 46.61.140(1) was evidence of negligence, but that whether the violation was a proximate cause of the accident was a question of fact.

From the partial summary judgment order flowed a stricter pretrial order in limine that stated: "defendant may

not present any evidence through any witnesses that this accident occurred in a way not involving Helen Maxwell violating RCW 46.61.140." Clerk's Papers (CP) at 479 (Order Re: Pl.'s Mot. in Limine, dated June 1, 1998). The court permitted Maxwell to argue any defense consistent with her making an improper lane change.

At trial, Maxwell testified she moved from the left lane to the shoulder and was hit as she was beginning a left-hand turn into the emergency turnaround from the shoulder. The trial judge found her testimony violated his order in limine, since turning left from the shoulder does not violate the lane change statute. Consequently, to enforce his order in limine, the judge instructed the jury: "It has been determined as a matter of law, and therefore is not an issue for you to decide, that Helen Maxwell attempted to enter a median turn-around lane by turning toward it from the right eastbound lane, and thereby violated this statute." CP at 600 (Jury Instruction 8). In effect, this instruction precluded the jury from giving any weight to Maxwell's theory of how the accident occurred, and thus functioned like collateral estoppel. Maxwell's counsel did not assign error on appeal to this instruction.

Substantial evidence was presented on the issue of damages. The jury found Maxwell liable and awarded the Hadleys $136,000. Maxwell appealed, arguing that the court erred in granting collateral estoppel to the district court decision and that the damage award was not supported by the evidence. The Court of Appeals affirmed in a unanimous unpublished decision. Maxwell petitioned for review solely on the collateral estoppel issue, which this Court granted.

## ANALYSIS

■ ■ The question raised flows naturally from the summary judgment order, rather than from the trial judge's application of the rules of evidence. Summary judgment decisions are reviewed de novo by appellate courts. *See Reid*

*v. Pierce County*, 136 Wn.2d 195, 201, 961 P.2d 333 (1998). Therefore, we apply de novo review.[1]

## Collateral Estoppel

██ "The doctrine of collateral estoppel is well known to Washington law as a means of preventing the endless relitigation of issues already actually litigated by the parties and decided by a competent tribunal. Collateral estoppel promotes judicial economy and prevents inconvenience, and even harassment, of parties." *Reninger v. Dep't of Corr.*, 134 Wn.2d 437, 449, 951 P.2d 782 (1998) (citing *Hanson v. City of Snohomish*, 121 Wn.2d 552, 561, 852 P.2d 295 (1993)). The instant case involves offensive collateral estoppel, where "a plaintiff . . . seek[s] to estop a defendant from relitigating the issues which the defendant previously litigated and lost against another plaintiff." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 329, 99 S. Ct. 645, 58 L. Ed. 2d 552 (1979).

██ Collateral estoppel is not a technical defense to prevent a fair and full hearing on the merits of the issues to be tried. "Washington courts focus on whether the parties to the earlier proceeding had a full and fair hearing on the issue." *Neff v. Allstate Ins. Co.*, 70 Wn. App. 796, 801, 855 P.2d 1223 (1993). We have developed a four-part test to analyze whether a previous litigation should have a collateral estoppel effect on a subsequent litigation. Collateral estoppel requires:

> "(1) identical issues; (2) a final judgment on the merits; (3) the party against whom the plea is asserted must have been a party to or in privity with a party to the prior adjudication; and (4) application of the doctrine must not work an injustice on the party against whom the doctrine is to be applied."

---

[1] Respondents argued in their answer that since Maxwell did not assign error to the jury instruction functionally applying collateral estoppel, she is precluded from making her argument. Answer at 13. However, the issue was fairly raised below and fully argued in the briefs. This Court has held the failure to assign error does not preclude appellate review, and that violation of the Rules of Appellate Procedure does not, by itself, bar review. *State v. Olson*, 126 Wn.2d 315, 318-19, 321, 893 P.2d 629 (1995) (citing RAP 1.2(a)).

*Southcenter Joint Venture v. Nat'l Democratic Policy Comm.*, 113 Wn.2d 413, 418, 780 P.2d 1282 (1989) (quoting *Shoemaker v. City of Bremerton*, 109 Wn.2d 504, 507, 745 P.2d 858 (1987)).

The parties in this case do not dispute that (1)-(3) are satisfied. The dispute is over the fourth prong, whether application of collateral estoppel will work an injustice against Maxwell.

■ To determine whether an injustice will be done, respected authorities urge us to consider whether "the party against whom the estoppel is asserted [had] interests at stake that would call for a full litigational effort." 14 LEWIS H. ORLAND & KARL B. TEGLAND, WASHINGTON PRACTICE: TRIAL PRACTICE, CIVIL § 373, at 763 (5th ed. 1996); *see also Parklane*, 439 U.S. at 330 (holding incentive to vigorously contest cases with small or nominal damages at stake could be a reason not to apply collateral estoppel); *Beale v. Speck*, 127 Idaho 521, 903 P.2d 110, 119 (1995) (holding collateral estoppel for misdemeanor traffic offenses generally inappropriate); *Rice v. Massalone*, 554 N.Y.S.2d 294, 160 A.D.2d 861 (1990) (holding collateral estoppel inappropriate after an administrative determination of liability for a traffic accident). Applying that analysis, the incentive to litigate was low—Maxwell was at risk $95.

In 1981, Washington joined other states in decriminalizing minor traffic offenses. Ch. 46.63 RCW. Commentators have since observed:

> The most important objective is the institution of a more expeditious system for handling minor traffic cases. . . . Law enforcement officials were anxious for a system which would enable them to keep more officers on the street rather than in courtrooms testifying in minor traffic cases. Prosecution and municipal attorneys sought a system which would free them to handle criminal cases more important than minor traffic violations.

Thomas C. Hoemann, *Washington's Decriminalization of Minor Traffic Offenses—A Summary of the New Law and Its Effect on the Courts of Limited Jurisdiction*, 17 GONZ. L. REV.

609, 613 (1982) (footnotes omitted). This reform also established a schedule of monetary penalties. RCW 46.63.110. This fee schedule has led critics to analogize this system to a "cafeteria," each infraction coming with a preestablished price. Critics contend the system creates too great an incentive to simply pay the fine rather than incur the time and expense to resist, whether or not the infraction was actually committed. *See, e.g., Beale*, 903 P.2d at 117 (holding that paying fines in a "cafeteria" style misdemeanor setting not entitled to the " 'dignity of a confession of fact' " (quoting *Hannah v. Ike Topper Structural Steel Co.*, 120 Ohio App. 44, 47, 201 N.E.2d 63, 65 (1963)); *see generally* Sheryl L. Musgrove & David W. Gross, *Use of a Traffic Citation in a Subsequent Related Civil Proceeding*, 33 IDAHO L. REV. 135 (1996).

Most jurisdictions have refused to admit traffic misdemeanors in subsequent civil cases, let alone allow them to be the basis for collateral estoppel. The instant case does not involve a misdemeanor; however, an analysis of traffic misdemeanors from jurisdictions that consider criminal acts which are merely civil infractions in Washington are appropriately analogous. The Maryland Supreme Court observed, " 'it is common experience that people plead guilty to traffic charges for reasons of expediency even though they may believe themselves innocent.' " *Briggeman v. Albert*, 322 Md. 133, 586 A.2d 15, 18 (1991) (quoting *Recent Cases*, 74 HARV. L. REV. 1452 (1960)); *Augustine v. Vill. of Interlaken*, 418 N.Y.S.2d 683, 68 A.D.2d 705, 712 (App. Div. 1979);[2] *Thurmond v. Monroe*, 159 Ill. 2d 240, 636

---

[2] Plainly traffic courts are neither designed nor equipped to become the crucial forum in a negligence suit. . . . Obviously with this incredible volume of convictions, the vast majority must routinely be handled by traffic courts in as expeditious a manner as possible. Since charges for traffic infractions rarely present a strong motive to defend (as noted defendant Albro's fine for this traffic infraction was only $25) the proceeding is ordinarily not conducted with the care and deliberation sufficient to commend its later use in the civil action. The proceeding often culminates in conviction by consent, rather than by trial. The leading text writers consider it sound policy to exclude the traffic infraction conviction from the general rule of admissibility.

*Augustine*, 68 A.D.2d at 711-12.

N.E.2d 544, 548 (1994) ("Ultimately, the danger of unfair prejudice from a traffic conviction outweighs its probative value. A conviction conveys a deceptive sense of certainty to the jury in a civil case that is difficult to challenge" (citation omitted)); *State v. Gusman*, 125 Idaho 805, 874 P.2d 1112, 1117 (1994) (refusing to give collateral estoppel effect to license suspension hearings because they lack a full and fair opportunity to litigate); *see also Parklane*, 439 U.S. at 330 (holding disincentive to vigorously contest cases with small or nominal damages at stake could be a reason not to apply collateral estoppel); *Beale*, 903 P.2d at 119 (holding collateral estoppel for convictions on misdemeanor traffic offenses generally inappropriate except perhaps for guilty pleas in open court); *Rice*, 160 A.D.2d 861 (holding collateral estoppel inappropriate after an administrative determination of liability for a traffic accident).[3]

Many states have shown great reluctance to admit traffic citations into evidence. In Idaho traffic records are inadmissible for any reason by statute. IDAHO CODE § 49-1202 (Michie 1994); *Martin v. Hackworth*, 127 Idaho 68, 896 P.2d 976, 978 (1995); *see also Ruthardt v. Tennant*, 252 La. 1041, 215 So. 2d 805, 808 (1968) (traffic citations not admissible in Louisiana in civil actions).[4]

---

[3] Related to the question of whether injustice results from giving a traffic infraction preclusive effect is the question of whether evidence of the citation or infraction is admissible in a civil action. Concerns about the reliability of a traffic citation, infraction, or misdemeanor have worked to keep that evidence from the jury in many contexts. Washington has long held a traffic citation is not admissible in a subsequent civil case to prove the party committed the driving lapse. *See Billington v. Schaal*, 42 Wn.2d 878, 882, 259 P.2d 634 (1953). The *Billington* court deemed the citation hearsay; that a citation is consistent with innocence and thus not probative. *Billington*, 42 Wn.2d at 881-82; *see also* ER 801(c). Similarly, this Court found it reversible error to admit the fact a driver was not cited after a traffic accident in a civil case arising out of the incident. *Warren v. Hart*, 71 Wn.2d 512, 514, 429 P.2d 873 (1967).

[4] While traffic misdemeanors have been held unreliable, several courts have admitted guilty pleas as evidence of the underlying factual issue. The Court of Appeals has held guilty pleas for traffic offenses admissible in subsequent civil litigation as statements against interest. *Ryan v. Westgard*, 12 Wn. App. 500, 510, 530 P.2d 687 (1975); *but see Safeco Ins. Co. of Am. v. McGrath*, 42 Wn. App. 58, 65, 708 P.2d 657 (1985) (holding collateral estoppel inappropriate for guilty pleas based on the coercive nature of plea bargaining and the hard practical choices faced by defendants). We do not reach the issue in this case.

## CONCLUSION

Collateral estoppel is, in the end, an equitable doctrine that will not be applied mechanically to work an injustice. To that end, we hold it is not generally appropriate when there is nothing more at stake than a nominal fine. There must be sufficient motivation for a full and vigorous litigation of the issue.

Accordingly, we reverse and order a new trial. Given that there has been a full and vigorous trial between the parties on the issue of the Hadleys' damages, and given that Maxwell did not petition this Court for review of the damage award, further proceedings do not require relitigation of that issue. *See* RAP 13.7(b); *France v. Peck*, 71 Wn.2d 592, 599, 430 P.2d 513 (1967) (ordering new trial on liability but not damages); *Keller v. City of Spokane*, 104 Wn. App. 545, 17 P.3d 661 (2001) (same).

ALEXANDER, C.J., SMITH, JOHNSON, MADSEN, IRELAND, BRIDGE, and OWENS, JJ., and HUNT, J. Pro Tem., concur.