FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2018 JUL 16 AM 8: 46

**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | | |
|---|---|---|
| MICHAEL WEAVER, | ) | DIVISION ONE |
| Appellant, | ) | |
| | ) | No. 76324-5-I |
| v. | ) | |
| | ) | PUBLISHED OPINION |
| CITY of EVERETT and STATE of WASHINGTON, DEPARTMENT of LABOR AND INDUSTRIES, | ) ) ) | |
| | ) | |
| Respondents. | ) | FILED: July 16, 2018 |
| | ) | |

DWYER, J. — Collateral estoppel and res judicata are common law doctrines that were, for centuries, applied solely to common law claims. The twentieth century rise of the administrative state brought with it an explosion of executive branch quasi-judicial decision-making. Eventually, the urge to apply common law principles in these otherwise statutorily-created forums proved irresistible. But the apples to oranges application of common law doctrines to statutory claims litigated in executive branch forums was—by its very nature—never guaranteed universal success. Many times, such applications fit nicely and a sound and fair resolution was achieved. Other times, however, the apples

to oranges application resulted in a distasteful fruit salad of injustice. This case falls into the latter category.

Michael Weaver, a long-time Everett firefighter, applied for compensation resulting from that which he alleged—and the law presumes—to be a work-related occupational disease. Weaver's petition is serious to him and his family; he suffers from brain cancer that has made it impossible for him to work and that will ultimately claim his life. The Board of Industrial Insurance Appeals ruled that either collateral estoppel or res judicata barred his claim. The superior court unfortunately adopted the same either/or analysis and also unfortunately ruled that Weaver's application was barred. But a careful review of these two distinct common law doctrines—conducted pursuant to the analytical framework mandated by our Supreme Court—reveals that neither doctrine, properly applied, bars Weaver's entreaty. Accordingly, we reverse.

I

Michael Weaver was employed between 1996 and 2014 by the City of Everett (the City) as a firefighter. In June 2011, Weaver noticed a mole on the skin of his left shoulder. The mole was removed and the resulting biopsy revealed that it contained a malignant melanoma.

Shortly thereafter, Weaver underwent surgery to remove the melanoma. After a period of recovery, Weaver returned to his employment as a firefighter.

The treatment and surgery caused Weaver to miss nearly five weeks of work, losing the opportunity to earn just under $10,000 in wages.[1]

While in recovery, in July 2011, Weaver filed a pro se application for temporary total disability benefits from the City, a self-insured entity for workers' compensation purposes. His application alleged that the malignant melanoma on his shoulder arose from his 15 years of working as a firefighter. He requested compensation for the nearly 5 weeks of wages that he had been unable to earn due to the medical treatment.

After initially granting Weaver's application, the Department of Labor and Industries (the Department) reconsidered its decision and denied his application. Thereafter, Weaver, through counsel, appealed the Department's denial order to the Board of Industrial Insurance Appeals (the Board). A hearing before an administrative law judge (ALJ) resulted. The City presented the published deposition testimony of two medical specialists, Dr. Robert Levenson, an oncologist, and Dr. John Hackett, a dermatologist.

Weaver's counsel, presumably due to monetary considerations, chose not to present the testimony of Dr. David Aboulafia, Weaver's treating oncologist. Nor did Weaver's attorney present testimony from a medical expert in oncology or dermatology.[2] Instead, Weaver's counsel presented the published deposition

_____

[1] Weaver's health insurance paid for the medical costs arising from his diagnosis and treatment in 2011.
[2] Based on our collective years of judging, we can easily imagine that significant costs would attach to retaining a medical specialist in oncology or dermatology to testify on Weaver's behalf during this proceeding, costs amounting to several thousands of dollars and possibly more than the value of the temporary total disability benefits that Weaver sought from the City. Indeed, although not a part of our record and therefore not a basis for our decision, at oral argument Weaver's current attorney informed the court that Weaver's present specialist in oncology had already been paid $19,000 for his medical-legal services in this case. Wash. Court of Appeals

- 3 -

testimony of Dr. Kenneth Coleman, a doctor with a practice in family and emergency medicine, but with no expertise in melanoma generally or in melanoma arising from occupational exposures specifically.

The ALJ recommended that the Board affirm the Department's order denying Weaver's application.[3] In February 2013, the Board adopted the ALJ's recommendation and issued a final order denying Weaver's application.

After the Board's ruling, Weaver's counsel withdrew. Weaver filed a pro se review petition in the superior court. Ten months later, with Weaver still unrepresented and no progress being made in the appeal, the parties entered into a stipulation and agreed order of dismissal. Weaver's petition for review was dismissed in late 2013.

In January 2014, Weaver began to have difficulty with mental processing and word finding. A magnetic resonance imaging test revealed a three-centimeter mass, a tumor, in the left frontal lobe of his brain.

Weaver immediately underwent surgery and the tumor was removed. The resulting biopsy diagnosed the tumor as a metastatic malignant melanoma, a form of cancer developing out of a primary cancer site. The logical conclusion was that the brain tumor had metastasized out of the malignant melanoma that Weaver noticed on his shoulder in 2011.

---

oral argument, Weaver v. City of Everett, No. 76324-5-I (June 4, 2018), at 6 min., 08 sec. (on file with court).

[3] The ALJ acknowledged that the Industrial Insurance Act, Title 51 RCW, mandates that cancer arising during a worker's employment as a firefighter is presumed to be an occupational disease. See RCW 51.32.185. However, the ALJ concluded that the City had rebutted this presumption and that Weaver had not presented additional evidence to rebut the City's evidence. Notably, the ALJ found that the opinion testimony of the City's medical specialists outweighed that of Dr. Coleman, Weaver's sole expert witness.

Weaver did not return to work as a firefighter after the surgery. He was estimated to have a 20 to 30 percent chance of survival over the next two years.

In July 2014, Weaver, now represented by counsel, submitted an application for workers' compensation from the City, seeking permanent total disability benefits. The application alleged that he suffered from a malignant melanoma located on his "upper back/scapula area, w/ cancer spreading to brain." He alleged that the condition arose from "sun exposure during outdoor firefighting and training from 1996 forward."

The Department denied Weaver's application on the basis that it had already rejected his application for compensation based on the malignant melanoma discovered on his shoulder and that the metastasized melanoma had arisen from the earlier melanoma.

Weaver sought an administrative appeal and, in the resulting proceeding, the ALJ recommended that the Board affirm the Department's rejection of Weaver's application for permanent total disability benefits. The executive branch official concluded that the common law doctrines of res judicata and collateral estoppel barred Weaver's application. The board, an executive branch agency, adopted the ALJ's proposed decision and order as its final order.[4]

---

[4] The Board is an executive branch agency. RCW 51.52.010. Accordingly, insofar as we review the Board's determination concerning the application of common law doctrines, we grant no deference to an assessment by an executive branch agency of the applicability of court-created doctrines of preclusion. Dana's Housekeeping, Inc. v. Dep't of Labor & Indus., 76 Wn. App. 600, 605-06, 886 P.2d 1147 (1995) ("An agency's legal interpretation in areas outside of its expertise is entitled to no deference." (citing Russell v. Dep't of Human Rights, 70 Wn. App. 408, 412, 854 P.2d 1087 (1993))). Executive branch officials do not have specific expertise in the development and applicability of the common law. Judges do.

Weaver filed a notice of appeal to the superior court. The superior court affirmed the Board's order and denied Weaver's petition, ruling that either collateral estoppel or res judicata barred his claim.

Weaver now appeals.

## II

## A

It is necessary for us to determine whether the superior court erred by affirming the Board's application of the doctrines of collateral estoppel and res judicata to bar Weaver from pursuing his claim for compensation under the Industrial Insurance Act, Title 51 RCW.

At the outset, we note that collateral estoppel and res judicata are equitable, court-created doctrines established at common law. See J.M. Weatherwax Lumber Co. v. Ray, 38 Wash. 545, 80 P. 775 (1905); see also Phillip A. Trautman, Claim and Issue Preclusion in Civil Litigation in Washington, 60 WASH. L. REV. 805, 806, 842 (1985). We further note that the Industrial Insurance Act, as set forth below, was enacted by our legislature in 1911 with the intent to abolish the common law cause of action then-available to workers and establish in its place a distinct statutory scheme aimed at providing workers "sure and certain relief." LAWS OF 1911, ch. 74, § 1, at 345.

Accordingly, in resolving the matter before us, we proceed with due caution so as to not unduly shoehorn common law concepts into a statutory scheme wherein our legislature did not specifically call for them to apply or may not otherwise have intended for their application.

B

Collateral estoppel and res judicata are affirmative defenses. Lemond v. Dep't of Licensing, 143 Wn. App. 797, 805, 180 P.3d 829 (2008) (collateral estoppel) (quoting State Farm Mut. Auto. Ins. Co. v. Avery, 114 Wn. App. 299, 304, 57 P.3d 300 (2002)); Davignon v. Clemmey, 322 F.3d 1, 17 (1st Cir. 2003) (res judicata). The proponent of either doctrine has the burden of proof. Lemond, 143 Wn. App. at 805 (quoting State Farm Mut. Auto. Ins. Co., 114 Wn. App. at 304); Davignon, 322 F.3d at 17.

Whether collateral estoppel or res judicata apply to preclude litigation is a question of law that we review de novo. Lemond, 143 Wn. App. at 803 (collateral estoppel) (citing State v. Vasquez, 109 Wn. App. 310, 314, 34 P.3d 1255 (2001), aff'd, 148 Wn.2d 303, 59 P.3d 648 (2002)); Lynn v. Dep't of Labor & Indus., 130 Wn. App. 829, 837, 125 P.3d 202 (2005) (res judicata) (citing Kuhlman v. Thomas, 78 Wn. App. 115, 119-20, 897 P.2d 365 (1995)). In reviewing a superior court ruling in a workers' compensation matter, we apply a standard of review akin to our review of any other superior court trial judgment. Rogers v. Dep't of Labor & Indus., 151 Wn. App. 174, 180-81, 210 P.3d 355 (2009).

On appeal, both the Department and the City urge us to affirm the decision of the superior court on the basis that they established that collateral estoppel and res judicata apply to preclude litigation on Weaver's application.[5] We address each doctrine in turn.

---

[5] At oral argument, the Department and the City each pressed a different basis for affirmance. While the Department contended that it established that collateral estoppel bars Weaver's application for permanent total disability benefits, the City contended that it established that Weaver's application is precluded by res judicata.

III

As an initial matter, the Department and the City contend that they established that collateral estoppel bars Weaver's application for permanent total disability benefits. We disagree.

A

The principles underlying the common law doctrine of collateral estoppel are well set forth in our opinion in <u>Lemond</u>.

> Collateral estoppel "'prevents relitigation of an issue after the party estopped has had a *full and fair opportunity* to present its case.'" <u>Barr v. Day</u>, 124 Wn.2d 318, 324-25, 879 P.2d 912 (1994) (quoting <u>Hanson v. City of Snohomish</u>, 121 Wn.2d 552, 561, 852 P.2d 295 (1993)). Collateral estoppel, or issue preclusion, is the applicable preclusive principle when "the subsequent suit involves a different claim but the same issue." Phillip A. Trautman, <u>Claim and Issue Preclusion in Civil Litigation in Washington</u>, 60 WASH. L. REV. 805 (1985). Thus,
>> [w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.
> RESTATEMENT (SECOND) OF JUDGMENTS § 27 (1982). Collateral estoppel prevents relitigation of issues in a subsequent claim or cause of action, whereas res judicata prevents a second assertion of the same claim or cause of action. <u>Seattle-First Nat'l Bank v. Kawachi</u>, 91 Wn.2d 223, 225-26, 588 P.2d 725 (1978). Thus, res judicata is generally referred to as claim preclusion, and collateral estoppel as issue preclusion. Trautman, <u>supra</u>, at 829.
> The purpose of the doctrine of collateral estoppel is to promote judicial economy by avoiding relitigation of the same issue, to afford the parties the assurance of finality of judicial determinations, and to prevent harassment of and inconvenience to litigants. <u>Hanson</u>, 121 Wn.2d at 561. These purposes are balanced against the important competing interest of not depriving a litigant

---

That the Department and the City, each defending the superior court's ruling here at issue, do not agree as to the proper basis on which to affirm the superior court's decision informs our inquiry in this matter.

of the opportunity to adequately argue the case in court.
RESTATEMENT, supra, § 27 cmt. c. at 252.
        The proponent of the application of the doctrine has the
burden of proving four elements to demonstrate the necessity of its
applicability:

> "(1) the issue decided in the prior adjudication is
> identical with the one presented in the second action;
> (2) the prior adjudication must have ended in a final
> judgment on the merits; (3) the party against whom
> the plea is asserted was a party or in privity with the
> party to the prior adjudication; and (4) *application of
> the doctrine does not work an injustice.*"

Thompson v. Dep't of Licensing, 138 Wn.2d 783, 790, 982 P.2d
601 (1999) (quoting Nielson v. Spanaway Gen. Med. Clinic, Inc.,
135 Wn.2d 255, 262-63, 956 P.2d 312 (1998)). Because all four
elements must be proved, the proponent's failure to establish any
one element is fatal to the proponent's claim.

143 Wn. App. at 803-05 (emphasis added).

Here, the Department has established the first three elements of collateral estoppel. Both of Weaver's applications for compensation regarded the identical issue of whether the malignant melanoma diagnosed on his left shoulder was caused by his employment as a firefighter. In addition, Weaver's application for temporary total disability benefits ended in a final judgment on the merits (the dismissal of his appeal). Additionally, the Department and the City were both parties to Weaver's application for temporary total disability benefits.

B

The remaining question is whether the Department and the City proved the fourth element of collateral estoppel—that application of the doctrine would not work an injustice against Weaver.

They did not.

"Collateral estoppel is, in the end, an equitable doctrine that will not be applied mechanically to work an injustice." Hadley v. Maxwell, 144 Wn.2d 306, 315, 27 P.3d 600 (2001). Application of the doctrine works an injustice upon a party when, during an earlier proceeding, that party did not have a "'full and fair opportunity'" to litigate the contested issue. Lemond, 143 Wn. App. at 803-04 (internal quotation marks omitted) (quoting Barr, 124 Wn.2d at 324-25). Indeed, for collateral estoppel to apply, the party must have had "sufficient motivation for a full and vigorous litigation of the issue." Hadley, 144 Wn.2d at 315.

Our Supreme Court's decision in Hadley is both controlling and instructive. In Hadley, two automobiles collided with one another. One of the drivers, Helen Maxwell, was issued a $95 citation for an improper lane-travel traffic infraction. Thereafter, Maxwell, pro se, unsuccessfully contested the citation before the district court. She did not call any witnesses on her behalf nor did she elect to appeal the district court's adverse decision to the superior court. Hadley, 144 Wn.2d at 308-09. In a subsequent personal injury lawsuit arising from the collision, the trial court ruled that Maxwell was collaterally estopped from denying her violation of the lane change statute. This was so, the trial court ruled, because Maxwell failed to appeal the district court's decision that she had committed the infraction. Hadley, 144 Wn.2d at 309-10. In the resulting trial, Maxwell was found liable for $136,000 in damages. Hadley, 144 Wn.2d at 310.

Appealing to our Supreme Court, Maxwell challenged the collateral estoppel ruling on the basis that its application constituted an injustice. As the court explained:

To determine whether an injustice will be done, respected authorities urge us to consider whether "the party against whom the estoppel is asserted [had] interests at stake that would call for a full litigational effort." 14 LEWIS H. ORLAND & KARL B. TEGLAND, WASHINGTON PRACTICE: TRIAL PRACTICE, CIVIL § 373, at 763 (5th ed.1996); see also Parklane [Hosiery Co. v. Shore], 439 U.S. [322,] 330[, 99 S. Ct. 645, 58 L. Ed. 2d 552 (1979)] (holding incentive to vigorously contest cases with small or nominal damages at stake could be a reason not to apply collateral estoppel); Beale v. Speck, 127 Idaho 521, 903 P.2d 110, 119 (1995) (holding collateral estoppel for misdemeanor traffic offenses generally inappropriate); Rice v. Massalone, 554 N.Y.S.2d 294, 160 A.D.2d 861 (1990) (holding collateral estoppel inappropriate after an administrative determination of liability for a traffic accident).

Hadley, 144 Wn.2d at 312. The Supreme Court adopted this consideration and instructed that collateral estoppel "is not generally appropriate when there is nothing more at stake than a nominal fine." Hadley, 144 Wn.2d at 315. Turning to Maxwell's circumstance, the court determined that "the incentive to litigate was low—Maxwell was at risk $95." Hadley, 144 Wn.2d at 312. The court accordingly ruled that, in the district court proceeding, Maxwell lacked sufficient motivation to fully and vigorously litigate whether she, in fact, committed the traffic infraction. Thus, the Supreme Court held, the superior court erred by precluding her from contesting that issue at the subsequent civil trial.

Weaver's circumstances are strikingly similar to those in Hadley. As with Maxwell's nominal incentive to litigate a $95 citation before the district court, Weaver's incentive to fully and vigorously litigate during the proceeding on his application for temporary compensation was low. Indeed, Weaver's initial application for compensation sought only temporary total disability benefits, those wages equivalent to five weeks of missed work. Weaver anticipated that he would—and he did—return to his duties as a firefighter after completing his

recovery. He was not then, as he is now, confronted by a brain cancer that is alleged to have left him permanently disabled, unable to work, with significant out-of-pocket medical expenses, and with a real possibility of death arising from the cancer.

Moreover, that Weaver had less than $10,000 in benefits at stake during his application for temporary compensation further informs our inquiry. Indeed, had Weaver retained a specialist in oncology or dermatology (or both), the cost of doing so might rival—or perhaps even eclipse—the modest benefit amount that he sought and, if his efforts proved unsuccessful, he would be entirely unable to recover these costs. See RCW 51.32.185(7).[6]

We note that our legislature has, for over 30 years, recognized that civil actions in which the amount in controversy is less than $10,000 fall into a special category of "small claims." See RCW 4.84.250. The legislature thus provided that

> in any action for damages where the amount pleaded by the prevailing party as hereinafter defined, exclusive of costs, is seven thousand five hundred dollars or less, there shall be taxed and allowed to the prevailing party as a part of the costs of the action a reasonable amount to be fixed by the court as attorneys' fees.

---

[6] RCW 51.32.185(7) reads, in pertinent part,

(7)(a) When a determination involving the presumption established in this section is appealed to the board of industrial insurance appeals *and the final decision allows the claim for benefits*, the board of industrial insurance appeals shall order that all reasonable costs of the appeal, including attorney fees and witness fees, be paid to the firefighter or his or her beneficiary by the opposing party.

(b) When a determination involving the presumption established in this section is appealed to any court *and the final decision allows the claim for benefits*, the court shall order that all reasonable costs of the appeal, including attorney fees and witness fees, be paid to the firefighter or his or her beneficiary by the opposing party.

(Emphasis added.)

*After July 1, 1985, the maximum amount of the pleading under this section shall be ten thousand dollars.*

RCW 4.84.250 (emphasis added). This cost- and fee-shifting provision manifested a recognition by the legislature of the economic difficulties that arise in fully litigating—whether as plaintiff or defendant—small monetary claims.

In this light, that Weaver's application for temporary compensation sought less than $10,000 in benefits supports that he sought an amount that did not provide sufficient motivation for a full and vigorous litigation of the initial compensation claim.

Viewed in the totality, the prevailing circumstances underlying Weaver's application for temporary total disability benefits suggest that he did not have sufficient motivation to fully and vigorously litigate the issue of whether his employment caused his cancer during the proceeding on his temporary compensation application. Accordingly, application of collateral estoppel to preclude him from litigating that issue in his present application works an injustice.

The Department and the City did not establish that application of collateral estoppel would not work an injustice against Weaver.[7] Accordingly, the superior court erred by barring Weaver's application on the basis of collateral estoppel.

---

[7] The Department contends that it established the fourth element of collateral estoppel because no procedural unfairness resulted to Weaver during the proceeding on his application for temporary compensation. The Department's argument fails. Procedural unfairness is not the only consideration material to whether application of collateral estoppel would work an injustice against a party. See, e.g., Hadley, 144 Wn.2d 306.

The Department next relies on State v. Hite, 3 Wn. App. 9, 472 P.2d 600 (1970), for the proposition that the inquiry into the fourth element of collateral estoppel includes a foreseeability component. Because Hite sets forth no such proposition, the Department's reliance is unavailing.

IV

The Department and the City next contend that they established that res judicata precludes Weaver's application for permanent total disability benefits. We disagree.

A

Res judicata is an equitable court-created doctrine established at common law. See Weidlich v. Indep. Asphalt Paving Co., 94 Wash. 395, 406, 162 P. 541 (1917); see also J.M. Weatherwax Lumber Co., 38 Wash. at 548; United States v. 111.2 Acres of Land, 293 F. Supp. 1042, 1049 (E.D. Wash 1968), aff'd, 435 F.2d 561 (9th Cir. 1970); accord Trautman, 60 WASH. L. REV. at 806, 828-29. Generally, res judicata bars the relitigation of claims that were litigated, *might* have been litigated, or *should* have been litigated in a prior action. Loveridge v. Fred Meyer, Inc., 125 Wn.2d 759, 763, 887 P.2d 898 (1995).

In Washington, res judicata applies "where a prior final judgment is identical to the challenged action in '(1) subject matter, (2) cause of action, (3) persons and parties, and (4) the quality of the persons for or against whom the claim is made.'" Lynn, 130 Wn. App. at 836 (quoting Loveridge, 125 Wn.2d at 763).

Here, there is no dispute that the Department and the City established the third element of res judicata—concurrence of identity between persons and parties—and the fourth element—concurrence of identity between quality of the persons for or against whom the claim is made.

The City and Department contend that they established the second element of res judicata—concurrence of identity of cause of action between Weaver's applications for compensation. This is so, the City and Department assert, because the Industrial Insurance Act grants workers a single cause of action for an allowance.

We accept, without analysis and for the limited purpose of resolving the matter before us, the contention that the Act sets forth a single cause of action for an allowance.

B

The Department and the City next contend that they established the first element of res judicata—concurrence of identity in subject matter between Weaver's applications for compensation under the Act. They did not.

1

In determining whether a party has established concurrence of identity of subject matter between two claims, the critical factors are "the nature of the claim or cause of action and the nature of the parties." Trautman, 60 WASH. L. REV. at 812-13 (citing Mellor v. Chamberlin, 100 Wn.2d 643, 673 P.2d 610 (1983)). As set forth in Black's Law Dictionary, "subject matter" is "[t]he issue presented for consideration; *the thing* in which a right or duty has been asserted; *the thing* in dispute." BLACK'S LAW DICTIONARY 1652 (10th ed. 2014) (emphasis added).

Our Supreme Court's decision in Mellor is instructive. There, the court addressed whether a lawsuit predicated on the same real estate transaction as an earlier lawsuit constituted litigation of the same subject matter for the purpose

of res judicata. Answering in the negative, the court ruled that, "[a]lthough both lawsuits arose out of the same transaction (sale of property), their subject matter differed. The first lawsuit disputed whether the Chamberlins misrepresented the parking lot as part of the sale. The second questioned whether Buckman's claim of encroachment breached the covenant of title."[8] Mellor, 100 Wn.2d at 646.

In support of its ruling, the Mellor court relied on its decision in Harsin v. Oman, 68 Wash. 281, 123 P. 1 (1912), wherein

> the plaintiff initially sued for a breach of a covenant against encumbrances and recovered nominal damages. A more substantial breach occurred and plaintiff sued on the same covenant. Harsin v. Oman, supra at 283. Defendants argued the second action was barred by res judicata. Holding for the plaintiff, we declared:
>> While it is admitted, there can be but one recovery upon the same cause of action. This does not mean the subject-matter of a cause of action can be litigated but once. *It may be litigated as often as an independent cause of action arises which, because of its subsequent creation, could not have been litigated in the former suit, as the right did not then exist.* It follows from the very nature of things that a cause of action which did not exist at the time of a former judgment could not have been the subject-matter of the action sustaining that judgment.
>
> 68 Wash. at 283-84.
>
> The law in Harsin is applicable in this present case. When the first suit for misrepresentation was filed, Mellor had neither suffered damages from the encroachment nor was he under an obligation to insist Buckman enforce her rights. Mellor v. Chamberlin, supra [34 Wn. App. 378,] 382-83 [, 661 P.2d 996 (1983)]. It was over a year after the settlement of the misrepresentation claim that Buckman decided to enforce her encroachment claim. Until that time, Mellor's lawsuit was not ripe.

---

[8] The misrepresentation action sought damages arising from the misleading conduct regarding the parking lot and the breach of a covenant of title action presumably sought recovery of $5,000 (the amount that the Chamberlins paid to Buckman to purchase the encroaching property), plus costs and fees. Mellor, 100 Wn.2d at 644-45.

Mellor, 100 Wn.2d at 646-47 (emphasis added). Thus, the Mellor court ruled that the second claim therein was not identical in subject matter to the prior claim because, at the time that the prior claim was filed, the subject matter underlying the second claim did not exist—and, hence, could not have been litigated.

Accordingly, pursuant to the reasoning in Mellor and Harsin, the question before us is whether the Department and the City established that the subject matter of Weaver's applications for compensation were identical—that is, whether the subject matter of his application for permanent total disability benefits could—or should—have been litigated during the proceeding on his application for temporary total disability benefits.

2

The Department and the City have not established that the subject matter of Weaver's applications pursuant to the Act is identical. Indeed, the Department and the City have not shown that Weaver's applications sought identical relief. They have not shown that his applications alleged identical facts. And, critically, they have not shown that the foregoing relief and facts set forth in his application for permanent total disability benefits could have or should have been litigated during the proceeding on his application for temporary total disability benefits.

i

The Department has not established that the relief sought by Weaver in his applications for compensation under the Act was identical.

As indicated, Weaver submitted two different applications for benefits—an application for temporary total disability benefits and an application for permanent

total disability benefits. In his application for temporary benefits, Weaver sought a one-time award of compensation arising from his total inability to work for a period of five weeks due to the treatment of the malignant melanoma on his shoulder. His application for permanent benefits, in contrast, requested recurring pension payments arising from his total inability to obtain gainful employment because of his metastasized malignant melanoma. That each of Weaver's applications requested different compensation suggests that he was not seeking identical relief in each application.

As will be addressed below, both the circumstances under which the Act was enacted and the Act's provisions reinforce this view. In addition, in reviewing the Act, we are mindful that

> [t]he guiding principle in construing provisions of the Industrial Insurance Act is that the Act is remedial in nature and is to be *liberally construed in order to achieve its purpose of providing compensation to all covered employees injured in their employment, with doubts resolved in favor of the worker.*

Dennis v. Dep't of Labor & Indus., 109 Wn.2d 467, 470, 745 P.2d 1295 (1987) (emphasis added) (citing RCW 51.12.010; Sacred Heart Med. Ctr. v. Carrado, 92 Wn.2d 631, 635, 600 P.2d 1015 (1979); Lightle v. Dep't of Labor & Indus., 68 Wn.2d 507, 510, 413 P.2d 814 (1966); Wilber v. Dep't of Labor & Indus., 61 Wn.2d 439, 446, 378 P.2d 684 (1963); State ex rel. Crabb v. Olinger, 196 Wash. 308, 311, 82 P.2d 865 (1938); Gaines v. Dep't of Labor & Indus., 1 Wn. App. 547, 552, 463 P.2d 269 (1969)).

The provisions and structure of the Act suggest that the legislature deliberately separated out the subject matter of a worker's personal injury action.

Prior to the Act's passage, workers seeking damages for injuries suffered in the course of their employment resorted to a common law personal injury action against their employers. See, e.g., McGuire v. Bryant Lumber & Shingle Mill Co., 53 Wash. 425, 102 P. 237 (1909); Ongaro v. Twohy, 49 Wash. 93, 94 P. 916 (1908). In this personal injury action, a worker had to not only allege and prove all factual bases and damages arising from the workplace injury but also prove the possibility of future damages (aggravation or death) arising from the injury, or else be precluded from doing so in a subsequent action. Sprague v. Adams, 139 Wash. 510, 520, 247 P. 960 (1926) ("[T]he decided weight of authority in this country supports the view that damages resulting from a single tort . . . are, when suffered by one person, the subject of only one suit as against the wrongdoer."); McGuire, 53 Wash. at 429. Accordingly, at common law, the cause of action then-available to workers and the subject matter underlying that cause of action were one and the same.[9]

In 1911, however, the legislature abolished the worker's personal injury action, declaring:

> *The common law system governing the remedy of workmen against employers for injuries received in hazardous work is inconsistent with modern industrial conditions.* In practice it proves to be economically unwise and unfair. Its administration has produced the result that little of the cost of the employer has reached the workman and that little only at large expense to the public. The remedy of the workman has been uncertain, slow and inadequate. Injuries in such works, formerly occasional, have become frequent and inevitable. The welfare of the state depends

---

[9] Indeed, in such a tort action, splitting a claim was forbidden. Sprague, 139 Wash. 510; White v. Miley, 137 Wash. 80, 241 P. 670 (1925); Kinsey v. Duteau, 126 Wash. 330, 218 P. 230 (1923); Collins v. Gleason, 47 Wash. 62, 91 P. 566 (1907); Kline v. Stein, 46 Wash. 546, 90 P. 1041 (1907); see also Enslev v. Pitcher, 152 Wn. App. 891, 222 P.3d 99 (2009); Landry v. Luscher, 95 Wn. App. 779, 976 P.2d 1274 (1999).

upon its industries, and even more upon the welfare of its wage-worker. *The State of Washington, therefore, exercising herein its police and sovereign power, declares that all phases of the premises are withdrawn from private controversy,* and sure and certain relief for workmen, injured in extra hazardous work, and their families and dependents is hereby provided regardless of questions of fault and to the exclusion of every other remedy, proceeding or compensation, except as otherwise provided in this act; and to that end *all civil actions and civil causes of action for such personal injuries and all jurisdiction of the courts of the state over such causes are hereby abolished, except as in this act provided.*

LAWS OF 1911, ch. 74, § 1, at 345 (emphasis added).[10]

As explained by our Supreme Court:

The Act is based on a quid pro quo compromise between employees and employers. The court in <u>Stertz v. Industrial Ins. Comm'n</u>, 91 Wash. 588, 590-91, 158 P. 256 (1916) explained the compromise: *The employer agreed to pay on some claims for which there had been no common law liability in exchange for limited liability. The employee agreed to give up available common law actions and remedies in exchange for sure and certain relief under the Act.* See <u>Weiffenbach v. Seattle</u>, 193 Wash. 528, 534-35, 76 P.2d 589 (1938).

<u>McCarthy v. Dep't of Soc. & Health Servs.</u>, 110 Wn.2d 812, 816, 759 P.2d 351 (1988) (emphasis added). Accordingly, the Act provided a legal framework for relief distinct from that previously available to workers at common law.[11]

As applied to the statutory relief made available to workers, the Act's provisions suggest that the legislature split the relief obtainable by workers in a

---

[10] This provision, as codified, remains identical, with the exception of its first sentence, which now reads: "The common law system governing the remedy of workers against employers *for injuries received in employment* is inconsistent with modern industrial conditions." RCW 51.04.010 (emphasis added).

[11] See also <u>Carrera v. Olmstead</u>, 196 Wn. App. 240, 246, 383 P.3d 563 (2016), <u>aff'd</u>, 189 Wn.2d 297, 401 P.3d 304 (2017) (the Act "grant[ed] workers injured on the job 'speedy and sure relief' in the form of workers' compensation benefits, but prohibit[ed] them from bringing negligence actions against their employers").

manner that did not previously exist at common law. Initially, and most obviously, the Act both categorized the relief available to workers into compensation schedules—predicated on the scope of the worker's injury—and fixed to a specified amount the relief available to workers. See LAWS OF 1911, ch. 74, § 5(a), at 356-58 (compensation schedule for an injury causing death); LAWS OF 1911, ch. 74, § 5(b), at 358 (compensation schedule for an injury causing permanent total disability); LAWS OF 1911, ch. 74, § 5(d), at 359 (compensation schedule for an injury causing temporary total disability); LAWS OF 1911, ch. 74, § 5(f), at 360 (compensation schedule for an injury causing permanent partial disability).[12] Compensation schedules that separated out and established the relief to which a worker was entitled based on the scope of the disability did not, of course, exist at common law.

Additionally, the Act separated out the relief that the worker could obtain for an aggravation of an initial injury.

> *If aggravation*, diminution, or termination *of disability takes place or be discovered after the rate of compensation shall have been established or compensation terminated* in any case the department may, *upon the application of the beneficiary* or upon its own motion, readjust for future application the rate of compensation in accordance with the rules in this section provided for the same, or in a proper case terminate the payments.

LAWS OF 1911, ch. 74, § 5(h) at 360-61 (emphasis added).[13] The Act thus provided a worker with the ability to obtain relief for an initial injury and—in a

---

[12] See also RCW 51.32.050 (compensation schedule where injury causes death); RCW 51.32.060 (compensation schedule where injury causes permanent total disability); RCW 51.32.080(compensation schedule where injury causes permanent partial disability); RCW 51.32.090 (compensation schedule where injury causes temporary total disability).

[13] See also RCW 51.32.160.

subsequent action—obtain additional relief that had not been alleged during the initial action. Consequently, this provision also separated the relief available to a worker in a manner not existing at common law. Accordingly, these provisions support that the legislature explicitly separated out the relief available to workers into distinct subject matter, rather than the unified subject matter of the common law claim.

In this light, Weaver's applications under the Act did not seek identical relief. In fact, neither the Department nor the City dispute that his requests for temporary total disability benefits and permanent total disability benefits sought distinct compensation.

Nevertheless, the Department and the City contend that Weaver's applications sought identical relief. This is so, they assert, because the only subject of relief set forth in the Act was compensation for workplace injuries. Therefore, the Department and the City continue, Weaver's applications merely sought compensation under the Act and thus had identical subject matter.

This myopic contention is unconvincing. As analyzed, the foregoing provisions of the Act suggest that the legislature did not, in actuality, set forth a singular form of relief for compensation for workplace injuries. Indeed, a single award of compensation was the relief previously available at common law and, as indicated, the legislature specifically declared that it was abolishing the common law action and replacing it with a distinct statutory scheme. LAWS OF 1911, ch. 74, § 1, at 345.

Thus, the Department and the City have not established that Weaver's applications sought identical relief under the Act.

ii

The Department and the City have also not established that Weaver's applications involved identical facts.

As indicated, Weaver filed an application for temporary total disability benefits and another application for permanent total disability benefits. In support of his application for temporary compensation that he filed in 2011, he alleged that he suffered from a malignant melanoma on the skin of his shoulder, the treatment of which caused him to miss five weeks of work before he was able to return. He further alleged that his employment as a firefighter caused the cancer.

In support of his application for permanent compensation that he filed in 2014, he alleged that he suffered from a newly diagnosed metastatic malignant melanoma that manifested itself as a brain tumor and that he was permanently unable to obtain gainful employment.[14]

Generally speaking, although there are some commonalities between Weaver's applications, it is evident that the facts underlying his applications are not identical. The Act—and judicial construction thereof—reinforce this view.

As will be iterated below, the Act's provisions suggest that the legislature split the evidence and proofs that a worker's application could establish in a

---

[14] Weaver's 2014 application also alleged that he suffered from a malignant melanoma on his shoulder and that his employment as a firefighter caused the cancer.

manner that did not previously exist at common law. To begin, the Act required

the following in order to request compensation:

> SEC. 5. *Schedule of Awards*
> **Each workman who shall be injured whether upon the premises or at the plant or, he being in the course of his employment, away from the plant of his employer**, or his family or dependents in case of death of the workman, **shall receive out of the accident fund compensation in accordance with the following schedule**, and, except as in this act otherwise provided, such payment shall be in lieu of any and all rights of action whatsoever against any person whomsover.
>
> . . . .
> SEC. 12. *Filing Claim for Compensation*
> (a) **Where a workman is entitled to compensation under this act he shall file with the department, his application for such, together with the certificate of the physician who attended him,** and it shall be the duty of the physician to inform the injured workman of his rights under this act and to lend all necessary assistance in making this application for compensation and such proof of other matters as required by the rules of the department without charge to the workman.

LAWS OF 1911, ch. 74, §§ 5, 12, at 356, 364-65 (bolded emphasis added).[15]

These provisions therefore require a worker to submit a certification of his

attending physician in order to support his application for compensation, a factual

predicate that was not specifically mandated at common law.

Moreover, establishing an attending physician's certification as a predicate

for a worker's application suggests the worker was limited to only alleging the

factual basis for an actual—rather than a potential—injury. Unlike at common

law, these provisions do not suggest that the worker could allege facts in support

---

[15] See also RCW 51.28.020(1)(a). The Act defined that "[t]he words injury or injured, as used in this act, refer only to an injury resulting from some fortuitous event as distinguished from the contraction of disease." LAWS OF 1911, ch. 74, § 3, at 349. The Act was later amended to add "occupational diseases"—including of the type alleged by Weaver in this matter—as compensable when "such disease or infection" "arises naturally and proximately out of extra-hazardous employment." LAWS OF 1941, ch. 235, § 1, at 772. See also RCW 51.32.160.

of the possibility of additional injury or death arising from the initial injury. Furthermore, by setting forth that a qualifying worker would receive "compensation in accordance with the following schedule," these provisions linked a workers' compensation to the specific injury alleged by the worker.

Hence, by requiring specific proof of injury and linking the specified compensation to such proof, a distinction not made at common law, these provisions support that the Act separated out the factual basis for requesting relief under the Act.

Additionally, the foregoing provision authorizing compensation for a later-discovered aggravation of a worker's initial injury supports this view. See LAWS OF 1911, ch. 74, § 5(h) at 360-61.[16] Indeed, a worker submitting an application for an aggravation of an initial injury could not rely on the factual basis that supported the worker's initial application for compensation. Rather, the worker was required "to present medical testimony of a causal connection based on 'some *objective medical evidence' that the injury 'has worsened since the initial closure of the claim.'*" Hendrickson v. Dep't of Labor & Indus., 2 Wn. App. 2d 343, 353, 409 P.3d 1162 (2018) (emphasis added) (quoting Tollycraft Yachts Corp. v. McCoy, 122 Wn.2d 426, 432, 858 P.2d 503 (1993)) (quoting Washington appellate decisional authority).[17] Hence, this provision allowed a worker to

---

[16] If aggravation, diminution, or termination of disability takes place or be discovered after the rate of compensation shall have been established or compensation terminated in any case the department may, upon the application of the beneficiary or upon its own motion, readjust for future application the rate of compensation in accordance with the rules in this section provided for the same, or in a proper case terminate the payments.

[17] These evidentiary requirements are no mere formality. "[I]n dealing with the Washington Industrial Insurance Act, 'persons who claim rights thereunder should be held to strict proof of their right to receive benefits provided by the [A]ct.'" Wilson v. Dep't of Labor & Indus., 6

introduce new facts related to the initial injury in a subsequent compensation proceeding that were not alleged during the initial compensation proceeding. As indicated, at common law, a worker could not, of course, split his claim for damages arising from a single injury.

The provisions setting forth the factual basis for obtaining compensation for an injury that disabled the worker and for an injury that resulted in the worker's death also support that the legislature split the factual basis of a worker's action. As indicated, § 12 of the Act regarded the filing of a claim for compensation and subsection (a) thereof set forth that, "Where a workman is entitled to compensation under this act he shall file with the department, his application for such, together with the certificate of the physician who attended him." LAWS OF 1911, ch. 74, § 12(a), at 364. Notably, in subsection (b) of that provision, the legislature set forth that,

> [w]here death results from injury the parties entitled to compensation under this act, or some one in their behalf, shall make application for the same to the department, *which application must be accompanied with proof of death and proof of relationship* showing the parties to be entitled to compensation under this act, *certificates of attending physician, if any,* and such other proof as required by the rules of the department.

Laws of 1911, ch. 74, § 12(b), at 364-65 (emphasis added).[18] Given that, an application for an injury resulting in death required proof of death and proof of relationship, a factual basis not identical to an application for an injury that results

_____

Wn. App. 902, 907, 496 P.2d 551 (1972) (quoting Hastings v. Dep't of Labor & Indus., 24 Wn.2d 1, 12, 163 P.2d 142 (1945)).
    [18] See also RCW 51.28.030.

in a disabling condition. Again, such claim splitting was not permitted at common law.

Lastly, that the Act requires distinct factual bases in order to establish a worker's entitlement to a specific compensation schedule supports that the Act separated out the facts of a worker's claim. As pertinent here, the provision regarding a "temporary total disability" requires a worker to establish that the worker suffers from "a condition *temporarily* incapacitating the workman from performing any work at any gainful occupation." Bonko v. Dep't of Labor & Indus., 2 Wn. App. 22, 25, 466 P.2d 526 (1970) (emphasis added) (citing RCW 51.32.090; Nash v. Dep't of Labor & Indus., 1 Wn. App. 705, 709, 462 P.2d 988 (1969)). In contrast, a "[p]ermanent total disability is defined as a 'condition *permanently* incapacitating the workman from performing any work at any gainful occupation.'" Bonko, 2 Wn. App. at 25 (quoting RCW 51.08.160).

In this light, the foregoing provisions suggest that the Act split the factual bases of the common law cause of action when creating the workers' compensation system.

As applied to the matter herein, Weaver's applications did not allege identical facts. His application for temporary total disability benefits alleged that he had missed five weeks of work arising from the treatment of the malignant melanoma on his shoulder. In contrast, his application for permanent total disability benefits alleged that he was permanently unable to continue on in his employment after the malignant melanoma on his shoulder metastasized and manifested itself as a brain tumor. Indeed, the medical evidence that he would

need to present in order to support each application would clearly not be the same. Thus, the factual basis for Weaver's applications are not identical.

Accordingly, the Department and the City did not establish that his applications involved identical facts.

iii

Lastly, and significantly, the Department and the City did not establish that Weaver could—or should—have litigated the subject matter of his application for permanent total disability benefits at the time that he litigated his application for temporary total disability benefits.

The factual basis for Weaver's application for permanent total disability benefits—the brain tumor—was not discovered until 2014, three years after his application for temporary total disability benefits was submitted. Indeed, it is undisputed that the basis underlying Weaver's allegations of permanent disability did not accrue until 2014—when the brain tumor impaired his capacity to perform the duties of a firefighter. Therefore, the facts underlying Weaver's application for permanent total disability benefits and the relief that he sought thereunder could not have been litigated at the time of his 2011 application.

Nevertheless, the Department contends that Weaver should have litigated the subject matter set forth in the application here at issue during the 2011 proceeding on his application for temporary total disability benefits. This is so, the Department asserts, because facts regarding the potential that his cancer might metastasize were set forth in the record during the 2011 proceeding.

The Department is mistaken. The referenced evidence was subject to exclusion but came in without objection—for reasons tactical or otherwise. Nevertheless, there is no indication that this evidence was material to Weaver's application during the earlier proceeding. Indeed, the possibility that Weaver's cancer might metastasize was irrelevant to whether Weaver was entitled to lump sum compensation recoverable under the Act for his temporary inability to earn wages as a firefighter while recovering from the surgery. Weaver did not fail to litigate something that he should have litigated in the first proceeding. The Department's contention fails.[19]

C

At the time that Weaver submitted his application for temporary total disability benefits, the facts underlying his application for permanent total disability benefits had not yet occurred and the permanent relief that he sought thereunder could not plausibly have been requested. Thus, the Department and the City have not established the first element of res judicata, that the subject matter of Weaver's applications were identical.

---

[19] The Department and the City also have not established that the equities underlying res judicata are in their favor. As indicated, in construing the Act, we resolve doubts in favor of the worker. See Dennis, 109 Wn.2d at 470. Initially, we are generally reluctant to apply this common law doctrine given that the legislature elected to preempt the worker's common law personal injury action and institute its own statutory scheme while *not* electing to incorporate the law of preclusion into the Act's provisions. Caution in precluding Weaver's application in this matter is further warranted because it would weigh against the legislative judgment that cancer manifesting itself during a worker's employment as a firefighter is presumed to have been caused by the firefighter's employment. See RCW 51.32.185(1). Thus, the Department and the City have not established that applying res judicata to preclude Weaver's application would be equitable.

Accordingly, the superior court erred by determining that res judicata

barred Weaver's application for permanent total disability benefits.[20, 21]

---

[20] As indicated, we accepted, without analyzing, the Department's contention that the Act sets forth a single cause of action for an allowance. We note, however, that if the Department or the City contend in the alternative that the Act sets forth *multiple* causes of action, res judicata would not apply. Indeed, if the Act sets forth multiple causes of action and, as analyzed, the Act abolished the common law action available to workers, this reinforces the view set forth herein that the legislature split the common law cause of action into multiple components. Assuming the common law action was so split, Weaver's applications for compensation constituted separate causes of action and res judicata would not apply.

[21] After oral argument in this court, the City submitted a statement of additional authorities, citing four cases to us. One is an opinion from our court, decided six years ago. Three are Supreme Court cases decided more than 80 years ago. Needless to say, all were available to counsel when her briefing was filed.

We have previously expressed our disaffection with this approach to appellate advocacy. See O'Neill v. City of Shoreline, 183 Wn. App. 15, 23, 332 P.3d 1099 (2014). By citing this authority to us, for the first time, after oral argument, counsel has deprived her opposing counsel of the opportunity to express his views on the authority. And, needless to say, counsel deprived us of the opportunity to explore the applicability, if any, of these cases during oral argument.

Nevertheless, as dutiful messengers of our judicial reasoning, we elect to address the cases cited, as follows:

1. Magee v. Rite Aid, 167 Wn. App. 60, 277 P.3d 1 (2012). This is an opinion explaining subject matter jurisdiction in general and the board's subject matter jurisdiction in particular. It does not inform our analysis.

2. Abraham v. Dep't of Labor & Indus., 178 Wash. 160, 34 P.2d 457 (1934). This opinion nowhere uses the terms "collateral estoppel" or "res judicata." It is, instead, a decision concerning whether the Department acted properly in vacating its own decision (akin to a court vacating its own judgment). It does not inform our analysis.

3. Luton v. Dep't of Labor & Indus., 183 Wash. 105, 48 P.2d 199 (1935). A case similar to Abraham. After a compensation award became final, the Department unilaterally cancelled it. The opinion nowhere uses the terms "collateral estoppel" or "res judicata," instead discussing principles applicable to vacations of judgments. It does not inform our analysis.

4. Ek v. Dep't of Labor & Indus., 181 Wash. 91, 41 P.2d 1097 (1935). This is a case with the result the City desires  The opinion is brief, and self-admittedly scant in analysis. It does not mention "collateral estoppel" or "res judicata." Nor does it apply the four-part res judicata analysis. It does, however, observe that "a judgment is binding upon the party against whom it runs." Ek, 181 Wash. at 94. Does this mean that the four-part res judicata test, for some reason, does not apply when workers' compensation is involved? We think not.

Indeed, Ek's cursory analysis is hard to square with then-existing case law, if Ek is indeed a res judicata decision.

The four-part res judicata analysis was announced as the law of Washington in 1918. N. Pac. Ry. Co. v. Snohomish County, 101 Wash. 686, 688, 172 P. 878 (1918). This was 17 years prior to the Ek decision. Soon after the Ek decision, the Supreme Court issued a decision which it explicitly announced as turning on the application of res judicata. Clubb v. Sentinel Life Ins. Co., 197 Wash. 308, 310, 85 P.2d 258 (1938). The Clubb court explicitly applied the four-part res judicata analysis. Years later, the Supreme Court applied the four-part analysis in a res judicata case involving a workers' compensation decision. Bordeaux v. Ingersoll Rand Co., 71 Wn.2d 392, 396, 429 P.2d 207 (1967).

It may be that Ek was not a res judicata case. It may be that Ek's analysis, as cursory as it was, was simply aberrant. What is clear is that for 100 years the four-part res judicata analysis

V

Weaver's application for permanent total disability benefits is not barred by collateral estoppel or by res judicata. In so concluding, we do not intend to suggest that an issue in a workers' compensation action can never be subject to collateral estoppel. Indeed, there may be circumstances in which a worker had an incentive to fully litigate the issue in an initial proceeding but did not.

In addition, our decision in this matter does not indicate that res judicata can never bar a subsequent petition for compensation in a workers' compensation matter. Indeed, we can easily conceive of circumstances involving the same subject matter where the worker did, could have, or should have litigated the subject matter in an earlier proceeding.

However, the laws of preclusion do not rightfully apply to Weaver's application. As elucidated by Washington's foremost scholar on civil procedure, Professor Trautman,

> [t]here is danger that in seeking to relieve the crowded dockets and backlog of litigation, courts will too readily turn to the rules of res judicata and collateral estoppel. It is critical to remember that the doctrines of claim and issue preclusion are court-created concepts. Accordingly, they can be adjusted to accommodate whatever considerations are necessary to achieve the final objective—doing justice.

Trautman, 60 WASH. L. REV. at 842.

By precluding Weaver from litigating the question of whether his employment caused his cancer, even though he lacked sufficient economic

---

has been a component of the common law of Washington. It has been consistently applied by our Supreme Court for at least the past 8 decades. Accordingly, we apply it herein.

motivation to do so in the earlier proceeding, and by precluding him from litigating his application for permanent total disability benefits, when he could not possibly have brought that application in the earlier proceeding, the superior court did not grant Weaver the justice to which he was entitled under the Act.

Reversed.

We concur: